# COURT OF COMMON PLEAS OF BALTIMORE CITY

Filed July 22, 1895.

## ROBERT NIXON

### VS.

## THE BALTIMORE HUMANE IMPARTIAL SOCIETY AND AGED WOMEN'S AND AGED MEN'S HOMES.

Tried before the Hon. CHARLES E. PHELPS.

APPEARANCES:

*Frank X. Ward* for petitioner.

*Miller & Bonsal* for respondent.

ORAL OPINION BY THE COURT—

By the Act of 1890, Chapter 290, a series of preceding statutes incorporating an institution under the name of The Baltimore Humane Impartial Society are consolidated, and the name of the institution is changed to The Baltimore Humane Impartial Society and Aged Women's and Aged Men's Homes. The Act goes on, and, in the third section, defines membership. The members of the corporation are the persons who make donations—life members those who donate thirty dollars, and those who subscribe three dollars annually are annual members. Those are the members of this corporation, as defined by this act of incorporation. In the sixth section it is provided that the superintendence and regulation and management of all the buildings in which the operations of the society shall be carried on, and the care and government of all the inmates therein, shall be vested in a Board of Managers, and such officers as may be, from time to time, appointed, and under such by-laws, rules and regulations as such managers may from time to time adopt.

This case has been argued as if the petitioner here, or the relator, were a *member* of the corporation, and cases have been cited which are applicable to the amotion of *members* of corporation. It appears from the act of incorporation that the relator is not in the attitude of a *member of this corporation*, but that his status is that of an *inmate of a home* connected with that corporation, and he is under the care and government of the managers of that corporation, and under their regulations.

Now, those regulations provide, with respect to the matter in controversy here, in the twelfth article, that no intoxicating liquors or stimulants shall be used, unless by the order of the physician or superintendent, and to be administered by them, and that a failure to observe this rule will be, in all cases, sufficient cause for expulsion. The twenty-first article provides that in the event of any infraction of the rules, or for misbehavior on the part of any of the inmates, the board of managers reserves to itself the power to dismiss the offender from the Home, after such investigation as the board deems proper to give upon one week's notice.

The contract, under which the relator in this case became an inmate of this Home for Aged Men, has been offered in evidence, and it reads, that part of it which is material to this case, as follows:

"We, the undersigned, at the instance and request of Mr. Robert Nixon, who is about to be admitted into the Aged Men's Home of the above named corporation, hereby covenant that he shall at all times yield due submission to the discipline, rules and regulation of the said corporation, of said Home, or its superintendent; and should said applicant, in the judgment of the board of managers thereof, fail to do so, they being the sole and exclusive judges thereof, or should he be afflicted with ungovernable insanity, we will at once remove said applicant from said institution, and release the institution from his support, to which said applicant testifies his assent by writing herein, and likewise so covenants: 'Done in consideration of such admission, this 2nd day of January, 1890.'"

Signed by Robert Nixon and Mrs. Ellen Habbersett and Mrs. Margaret Hays.

There then follows another covenant which does not bear materially upon the controversy before the Court.

It appears, from the act of incorporation, from the rules and regulations of the board of managers, and from the contract under which the relator entered the institution, that he submitted himself, voluntarily, to restrictions upon his freedom, which, but for the contract, he or no other person could be compelled to submit to. He has bound himself very broadly, not to use intoxicating liquors, unless prescribed by a physician or the superintendent, and he has consented that if he fails to observe this rule it will be sufficient for his expulsion. That he voluntarily submits himself to. It is simply a matter of contract. The reasonableness or unreasonableness of the provision does not come into question here. If he had bound himself by contract not to attend baseball games, or not to wear buttons on his coat, he would have had a perfect right to do so. If he chose to consent that his going to a baseball game, or wearing buttons on his coat instead of hooks and eyes, would be a proper cause for his expulsion from the institution he would be bound by it, and if he were expelled for so doing it would come back ultimately to his own covenant and his own voluntary contract. So in regard to the use of liquor.

It is evident from the general character of this institution and the means of its support, which are somewhat limited, that upon looking around for the subjects upon whom its charity is to operate, it is very natural it should have the right, and should exercise it, of limiting the objects upon whom their benevolence is to operate to those who, in their judgment, will, in the long run, turn out to be most amenable to such discipline as they find it necessary to establish for the proper government of the institution, and whose presence will be most acceptable to their fellow inmates and the board of managers. So with respect to the unreasonableness of that provision as to the use of liquor, I don't think there is any cause to complain that it is too unlimited or broad, or that it is meant to apply only to the inside of the institution, because it is very obvious the same difficulties that would follow from the use of intoxicating liquors or stimulants, except in the manner prescribed, inside the institution could not be avoided by permitting them to be used on the outside.

Now with respect to the twenty-first article. After considerable attention to the peculiar phraseology of that article, I am of the opinion that the investigation referred to therein is an investigation that should be held upon one week's notice, and that the provision of notice applies to the investigation rather than to the dismissal. That, I think, is the natural reading of the language, and any other reading would seem to be inverting the order in which they have chosen to arrange the words in order to express their idea.

Now there was a complaint, not to say successive complaints, preferred against this petitioner, and he had notice that an investigation would be held. It doesn't seem that he had a week's notice of the investigation, but, at all events, it was a notice which procured his attendance. That was the investigation of the 7th of February. His personal presence at that investigation, and his participation in what took place there was a waiver upon his part of any technical objection there might have been as to notice. So it makes no difference whether he received the formal notice or not. He was there in proper person.

In considering what took place at that and the subsequent meeting at which he was not present, I think it is to be borne in mind that we are dealing here with a charitable institution conducted by ladies, and we are not to expect the same close attention to the technicalities of procedure that we would have the right to expect or look for in bodies of a different character. I think the Court is authorized to take that view of the nature of the proceedings here from the view the Court of Appeals took of proceedings before magistrates, in the case of Glenn, 54 Md. 572. We are to look, in other words, at substance, rather than form. We are to find out whether this petitioner had his rights substantially recognized, and whether the rule relating to notice has been substantially applied in his favor.

Now, at the meeting in February he appeared in proper person, and he admitted that the complaints made against him were true. He admitted he had been guilty of a violation of the rules in a particular—in the use of intoxicating liquors, and that he had used them to some excess. He prom-

ised not to repeat the offense, and, upon that promise, he received what might be called a conditional pardon. He was told, in the language of Scripture, substantially, to go and sin no more, and he was told at the same time that if he fell again he would be dismissed. A subsequent meeting took place on the 6th of June. At that meeting he was not present. Of that meeting he had not received one week's notice. He did, however, according to his own admission, have notice of that meeting, and he did know that that meeting was for the purpose of considering his case. He was sent for, but he couldn't be found. Evidence was taken which satisfied the ladies in charge that he had forfeited his conditional pardon; and, upon being so satisfied, they gave him notice, supposing they were obliged to give him a week's notice at least of his dismissal, from the Home. The question we are to consider is whether the managers had jurisdiction of the case, and whether their removal of him was justified by the rules and regulations as applicable to the facts. I think the managers had jurisdiction of the case. I think they had jurisdiction when at the meeting in February they had him before them in person, when they heard his admissions and when they found him guilty, and when they passed sentence upon him which was conditional. I think the formal and effective assumption of jurisdiction was at that meeting. What ascertainment upon their part of the fact upon which depended the forfeiture or continuance of the conditional pardon he had previously received, and the removal that was afterwards ordered was a removal that related back, in point of sentence and in point of fact, to the proceedings in February when the Board had jurisdiction over the party.

I also agree with the view taken by the learned counsel for the Institution, that according to the admissions of the petitioner himself in this case, it is very clear that a reinstatement would be a mere nugatory act, inasmuch as it is perfectly plain a violation of the Rules, has been committed of such a character as to justify his dismissal.

I think, in view of all these facts, it results the petition must be dismissed. I refuse the prayers offered on behalf of the petitioner, and grant the three offered on behalf of the respondent.